DAVID R. ONGARO, State Bar No. 154698
dongaro@ongaropc.com
CARA R. SHERMAN, State Bar No. 269343
csherman@ongaropc.com
ONGARO PC
1604 Union St.
San Francisco, CA  94123
Telephone:  (415) 433-3900
Facsimile:  (415) 433-3950

Attorneys for Defendant
HEARTLAND EXPRESS, INC. of IOWA
Incorrectly sued as HEARTLAND EXPRESS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE CONNELL, an individual: on behalf of herself and all others similarly situated; FRANCINE ADAMS, an individual; on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HEARTLAND EXPRESS, INC. and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 2:19-cv-09584-RGK-JC<br><br>**DEFENDANT'S OPPOSITION TO PROPOSED INTERVENOR FREITAS AND CALVERT'S MOTION TO INTERVENE AND STAY DISSEMINATION OF NOTICE OF SETTLEMENT**<br><br>Date: April 26, 2021<br>Time: 9:00 a.m.<br>Courtroom: 850<br><br>Before Hon. R. Gary Klausner<br>Complaint Filed:      November 7, 2019 |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................ 1

II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ................ 1

    A.     History of Settlements with Heartland and Predecessors ..................... 1

    B.     The *Fosse and Christensen* Action ..................................................... 3

    C.     The *Freitas* Action ............................................................................. 3

        i.     PIs' Meal and Rest Break Claims Have No Value ..................... 3

        ii.    PIs' Sleeper Berth Claims Are Extremely Weak ....................... 4

    D.     The Settlement of This Action ............................................................. 6

        i.     The Parties Validly Settled Washington Claims ........................ 6

        ii.    The Parties Had Reason to Settle Meal and Rest Claims ........... 7

        iii.   Plaintiffs Had Grounds to Amend Their Complaint to Bring "Sleeper Berth" Claims ............................................................. 7

        iv.    Modifications to the Notice and Settlement ............................... 8

III.   LEGAL ARGUMENT ............................................................................... 8

    A.     PIs' Motion Should Be Denied As Moot .............................................. 8

    B.     PIs Cannot Intervene of Right .............................................................. 10

        i.     Legal Standard for Intervention of Right ................................. 10

        ii.    PIs' Motion is Untimely ........................................................... 10

        iii.   PIs' "Significant Protectable Interest" Does Not Extend to A Right to Prosecute Class or Collective Claims ..................... 12

        iv.    PIs' Can Protect Their Interests Absent Intervention ............... 12

        v.     PIs' Interests Are Adequately Protected .................................... 14

    C.     PIs Do Not Meet the Standard for Permissive Intervention ................ 15

        i.     Legal Standard for Permissive Intervention ............................. 15

        ii.    This Court Should Deny Permissive Intervention ..................... 16

D. PIs' Various Attacks of the Settlement Terms and Approval Process Are Irrelevant to the Intervention Analysis ............................ 16

  i. The Agreement to File An FAC Was Valid .............................. 17

  ii. The Settlement Is Not a "Paltry" Settlement of "Valuable Claims" for Pennies in the Dollar ................................................ 17

  iii. Announcing a Settlement Before It Is Final and the Court Preliminary Approves It Is Premature ........................................ 19

  iv. The Existence of Other Litigation With No Certified Classes Is Irrelevant to the Preliminary Approval Inquiry .................... 19

E. Dissemination of Notice Should Not Be Stayed ................................. 20

IV. CONCLUSION .................................................................................................... 20

OPPOSITION TO FREITAS-CALVERT MOTION TO INTERVENE

# TABLE OF AUTHORITIES

## Cases

*Apple Inc. v. Iancu*,
2021 WL 411157 (N.D. Cal. Feb. 5, 2021) ................................................................. 10

*Asghari v. Volkswagen Grp. of Am., Inc.*,
2015 WL 12732462 (C.D. Cal. 2015) ........................................................................ 14

*Blodgett v. FAF, Inc.*,
446 F.Supp.3d 320 (E.D. Tenn. 2020) ...................................................................... 18

*Bostain v. Food Express, Inc.*,
159 Wn.2d 700, 712 (2007) ........................................................................................ 6

*Browne v. P.A.M. Transp,*
2020 WL 4430991 (W.D. Ark. 2020). ...................................................................... 17

*Cohorst v. BRE Properties, Inc.*,
2011 WL 3475274, at *6 (S.D. Cal. 2011) ............................................................... 13

*County of Orange v. Air Calif.*,
799 F.2d 535 (9th Cir. 1986) ............................................................................. 11, 16

*Davis v. J.P. Morgan Chase & Co.*,
775 F.Supp.2d 601 (W.D.N.Y. 2011) ....................................................................... 13

*Donnelly v. Glickman*,
159 F.3d 405 (9th Cir. 1998) ............................................................................. 12, 16

*Dueker v. CSRT Exped. Inc.*,
2020 WL 7222095 (C.D. Cal. 2020) ........................................................................ 18

*Freedom from Religion Fdn. v. Geithner*,
644 F.3d 836, 841 (9th Cir. 2011) ..................................................................... 10, 16

*Gatdula v. Crst Int'l, Inc.*,
2015 WL 12778350 (C.D. Cal. 2015) ...................................................................... 11

*Haworth v. New Prime, Inc.*,
448 F.Supp.3d 1060 (W.D. Mo. 2020) ............................................................... 17, 18

*Hofstetter v. Chase Home Finance, LLC*,
2011 WL 5415073 (N.D. Cal. 2011) ........................................................................ 13

*Hughes v. S.A.W. Ent., Ltd.*,
2019 WL 2060769 (N.D. Cal. 2019) ...................................................................... 13

*Int'l Bhd. of Teamsters, Local 2785 v. Fed. Motor Carrier Safety Admin.*,
986 F.3d 841 (Jan. 15, 2021) ...................................................................................... 7

*Julian v. Swift Transp. Co.*
2020 WL 6063293 (D. Ariz. 2020) ........................................................................ 17

*Kennedy v. LTI Trucking Services, Inc.*,
2019 WL 4394539 (D. Mo. 2019) .......................................................................... 18

*Lane v. Wells Fargo Bank, N.A.*,
2013 WL 3187410 (N.D. Cal. 2013) ...................................................................... 14

*League of United Latin American Citizens v. Wilson*,
131 F.3d 1297 (9th Cir. 1997) ................................................................................ 10

*Lubocki v. ZipRealty, Inc.*,
2009 WL 10670958 (N.D. Cal. 2009) .................................................................... 14

*McNutt v. Swift Transportation Co. of Az., LLC*,
2020 WL 38192329 (W.D. Wa. Jul. 7, 2020) ........................................................ 15

*Montgomery v. Rumsfeld*,
572 F.2d 250 (9th Cir. 1978) .................................................................................. 16

*Murphy v. Best Buy Stores, L.P.*,
2020 WL 8461749 (C.D. Cal. 2020) ...................................................................... 14

*Nance v. May Trucking Co.*,
685 Fed.Appx. 602 (9th Cir. 2017) ........................................................................ 18

*Perry v. Prop. 8 Official Proponents*,
587 F.3d 947 (9th Cir. 2009) .................................................................................. 10

*Petrone v. Werner Enterp., Inc.*,
2017 WL 510884 (D. Neb. 2017) ........................................................................... 19

*Prete v. Bradbury*,
438 F.3d 949 (9th Cir. 2006) .................................................................................. 14

*Raquedan v. Centerplate of Delaware Inc.*,
376 F.Supp.3d 1038 (N.D. Cal. 2019) ................................................................... 13

1

2

*Ridgeway v. Wal-Mart Stores, Inc.*
3    946 F.3d 1066, 1083 (9th Cir. 2020) ................................................................ 17, 18

4    *Sales v. United Rd. Svcs, Inc.,*
     2020 WL 4035072 (ND. Cal. 2020) ................................................................ 7
5

6    *Wershba v. Apple Computer, Inc.,*
     91 Cal.App.4th 224 (2001) ................................................................ 10
7

8    *Zepeda v. PayPal, Inc.,*
     2014 WL 1653246, at *4 (N.D. Cal. 2014) ................................................................ 13

9                                            <u>Regulations</u>

10   29 CFR § 785.22 ................................................................ 4

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION

Plaintiffs Jacqueline Connell and Francine Adams and Defendant Heartland Express, Inc. of Iowa reached a fair and reasonable settlement of class claims in September, 2020 and, after four months of continued negotiations and exchange of confirmatory discovery, requested this Court preliminarily approve the settlement and send notice to the two Rule 23 settlement classes and the FLSA settlement class.

Proposed Intervenors Greg Freitas ("Freitas") and Ryan Calvert ("Calvert") (together, "PI"), plaintiffs in an overlapping class and collective action, now seek to inject themselves into this litigation as intervenors for the sole purpose of preventing notice from issuing and challenging the settlement.  But PIs' efforts are futile because they waited until notice was already approved and about to be sent, and their concerns about the value of the settlement will be addressed at the final approval stage.

Setting aside the futility of their efforts, PIs' application to intervene should be denied because they have not met the requirements for either mandatory or permissive intervention: their motion is not timely, their rights are protected by their ability to opt out or object to the settlement, and the real right they seek to protect is a nonexistent priority to prosecute a class and collective action and have exclusive rights to settlement negotiations.  PIs' are merely unnamed class members. This Court will protect their rights along with every other member of the settlement classes, and they have the same right as every other member of the settlement classes to object, opt out, or not participate.  The fact that they filed a lawsuit and took a deposition does not elevate them to a revered status or bestow them with more wisdom than Plaintiffs' counsel (who engaged in months of negotiations and claim evaluation) or this Court when it comes to evaluating the settlement.

The motion to intervene should be denied.

## II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. History of Settlements with Heartland and Predecessors.

An important piece of the current litigation landscape is the fact that Heartland

and its predecessors in interest, Gordon Trucking, Inc. ("GTI," purchased by Heartland in November 2011 and held as a wholly owned subsidiary until a statutory merger extinguished GTI on July 1, 2016) and Interstate Distributor, Co. ("IDC," purchased by Heartland on July 6, 2017 and held as a wholly owned subsidiary until a statutory merger extinguished IDC on October 1, 2017) have paid mightily to release claims for alleged failure to properly pay wages and/or provide breaks to long-haul truckers.

*Plimpton v. GTI* released California and federal claims against GTI "and its present and former parent companies, subsidiaries, divisions, affiliates, related companies, and joint venturers" from June 19, 2009 through October 13, 2016. *See* Req. for Jud. Notice In Support of Opp'ns to Mot's to Intervene ("RJN"), Exh. 1.

*Bennett v. Heartland* released California claims against Heartland from May 5, 2012 through June 1, 2012. *See* RJN, Exh. 2.

*Numi v. IDC* released California and federal claims against IDC and any and all of its "parent companies, predecessors, subsidiary and all other affiliated or related companies" from July 20, 2011 through March 3, 2017. *See* RJN, Exh. 3.

GTI and Heartland also paid out "safe harbor" payments as allowed under AB 1513, to create an affirmative defense to any claim under California law for recovery of wages "based solely on the employer's failure to timely pay the employee the compensation due" for "nonproductive time" for time periods prior to December 31, 2015. *See* Dkt. 36-1, ¶ 16.

*Layton v. GTI* released Washington and federal claims against GTI and its "former and current parents. . . and any other successors" from January 11, 2014 through October 1, 2017. *See* RJN, Exh. 4.

*Stone v. IDC* released Washington and federal claims against IDC and its "parent companies, predecessors, subsidiary and all other affiliated or related entities" from December 17, 2012 through July 6, 2017. *See* RJN, Exh. 5.

PI Freitas participated in the *Stone* settlement. PI Calvert participated in both the *Plimpton* and *Numi* settlements. PI Christensen and Connell participated in the

*Plimpton* settlement.  PI Fosse participated in the *Numi* settlement.  Ongaro Dec., ¶5.

Adams is the only plaintiff who has not yet released her claims.

### B. The *Fosse and Christensen* Action.

As described in greater detail in Defendant's opposition to the motion to intervene brought by PIs Christensen and Fosse, those two PIs originally had separate actions which were coordinated and then consolidated.  *See* Def. Opp'n to Christensen-Fosse Mot. to Intervene, at 3:9-5:12. Defendant filed Notices of Related Cases in both *Fosse* and *Christensen* and alerted the court and parties to the existence of *Connell* once the matters were consolidated.  RJN, Exhs. 7-8.

### C. The *Freitas* Action

The *Freitas* action was filed by Proposed Intervenors Gregg Freitas and Ryan Calvert on November 5, 2019 in the United States District Court for the Eastern District of Washington, after the *Christensen* matter was filed.  Dkt. 50-2. According to their testimony, Freitas and Calvert filed their lawsuit because they saw and responded to advertisements by their counsel soliciting plaintiffs for litigation against trucking companies; the decision to bring their lawsuit was with hope for personal gain.  Ongaro Dec., Exh. A (Transcript of 10/16/20 Dep. of G. Freitas), at 116:7-22; Exh. B (Transcript of 10/28/20 Dep. of R. Calvert), at 14:8-16:11, 18:5-23.

Freitas and Calvert brought claims brought claims under federal, Washington and California law for purported failure to pay all wages, and for alleged meal and rest break violations under California and Washington law.  *See* Dkt. 50-2.

### i.  PIs' Meal and Rest Break Claims Have No Value.

About a month after PIs' complaint was filed, on December 28, 2019, the FMCSA issued its decision that California meal and rest break laws as applied to long-haul truckers were preempted by federal law.  83 Fed. Reg. 67470 (Dec. 28, 2018). The Washington Trucking Association had petitioned the FMCSA in April 2019 for a similar opinion about preemption of Washington meal and rest break laws, but that petition was not decided until November 17, 2020.  85 FR 7335-02, 2020 WL 6710503.

Defendant considered challenging Plaintiffs' meal and rest break claims as soon as the California FMCSA decision was issued, but determined that it was prudent to wait and see what the FMCSA's opinion was on preemption of Washington laws before requesting a Washington court dismiss Washington claims based on an FMCSA decision about California laws.

By the time the FMCSA had issued its opinion that Washington meal and rest break laws are similarly preempted, the parties in *Freitas* were briefing the FLSA Conditional Certification issue (which did not deal with meal and rest breaks) and the parties in this case were working on finalizing the settlement terms here. Thus, it did not make sense at that time to bring a motion to dismiss the meal and rest break claims in *Freitas*, but Defendant has no doubt that they will be dismissed upon request.

### ii. PIs' Sleeper Berth Claims Are Extremely Weak.

After written discovery and depositions of Freitas and Calvert and Defendant's "person most knowledgeable," Freitas finally filed a motion for conditional certification of their FLSA claims on November 30, 2020. Dkt. 50-3. The thrust of Freitas' request was that long-haul truckers should be compensated for time spent on 10-hour 'resets' that federal law requires be totally off duty. *Id*.[1]

The applicable DOL regulations set forth certain circumstances under which sleeping time is not compensable. *See* 29 CFR § 785.22. Under that regulation, sleep time is not compensated when (1) the employer and the employee agreed to exclude sleeping periods from pay; (2) the sleeping periods are regularly scheduled; (3) the employer provided adequate sleeping facilities; and (4) the employees were able to usually enjoy an unlimited night's sleep. *Id*., at 4:5-5:8.

Defendant opposed the conditional certification motion[2] on January 14, 2021,

---

[1] Calvert did not join in the motion, apparently recognizing his claims were released because of his participation in the *Numi* settlement. Dkt. 50-3, at p. 15:14-16:1.

[2] The conditional certification motion has not been decided. Ongaro Dec., ¶ 9. There has been no motion for certification of PIs' state-law claims under Rule 23. *Id*.

and provided sworn declarations from 13 long-haul truck drivers demonstrating, among other points, that (1) time drivers spend on 10-hour resets was truly off duty, drivers had full control over their off-duty time, and spent that time engaging in purely personal endeavors, entirely unencumbered by work responsibilities; (2) drivers have adequate sleeping facilities and sleep on regular schedules; and (3) drivers' agreement with Defendant was that the off-duty time would be uncompensated. *See* RJN, Exhs. 11-23. Notably, Defendant put on evidence that the declarants' and all full-time drivers' average weekly wages were all above the required weekly pay *even if* they were entitled to compensation for all hours PIs claim should be compensated[3] in a week. *See* RJN, Exh. 10 at ¶¶ 4-5.

Indeed, PI Calvert himself admitted that understood his 10-hour resets would be uncompensated. Ongaro Dec., Exh. B (Calvert Trans.), at 163:23-164:4 ("Q. Even though you understood and the company understood they were not going to pay you for that time period; is that correct? [Objection] The Witness: At that time, that was the understanding, yes.").

In light of this evidence, PIs overstate the "admissions" they received from Defendant's Rule 30(b)(6) witness. An "admission" "regarding Defendant's 'no pay for sleeper berth' policy" (Dkt. 50, at 8:10-13) has no practical value, because Heartland's agreement with drivers is that sleeper berth time is not compensated. This agreement guts any drivers' sleeper berth claim. Thus, even if PIs have a colorable claim that they should be compensated for their 10-hour resets, there is not a viable class claim since many drivers' sleeping time is definitely not compensable.

---

[3] Under federal law, long-haul drivers must take a "34 hour reset" once every seven days. 49 C.F.R. 395.3(c)(1). PIs do not apparently claim that this 34 hour reset is compensable, because they focus only on the "sleeper berth" time that is actually a daily 10-hour reset. Thus, the total number of hours PIs could possibly be claiming are compensable, assuming a driver is out "over the road" for the entire week, would be $(24 \times 7) - 34 = 134$. At federal minimum wage of $7.25/hour, a driver must make at least $971.50 per week to satisfy the FLSA.

Upon preliminary approval of the settlement in this case, counsel for Defendant informed counsel for PIs Freitas and Calvert of the settlement and requested a stipulation to stay and agreement that counsel would not contact members of the settlement class.  Ongaro Dec., ¶ 10.  Counsel for PIs would not agree, so Defendant moved the court for relief, which motion will be heard on April 8, 2021.  *Id*.

### D. The Settlement of This Action.

This Court is familiar with the terms of the settlement, having already carefully reviewed them in connection before finding they were fair and reasonable and granting preliminary approval.  However, Defendant will address some of PIs' allegations.

### i.  The Parties Validly Settled Washington Claims.

First, PIs argue that the Parties "settled claims on behalf of a Washington class, despite lacking a class representative who is either a Washington resident or Washington-based driver.  Dkt. 50, at 9:10-12.  PIs are mistaken.

Washington wage and hour law applies to "Washington-based employees." *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 712-721 (2007).  As the Washington Department of Labor & Industries ("L&I") acknowledged, neither state statutes, regulations or case law define what "Washington-based" means.  *See* Wn. State Dep't of Lab. & Indus. Empl. Standards No. ES.A.13   (issued 5/22/2019), available at https://lni.wa.gov/workers-rights/_docs/esa13.pdf (last visited March 28, 2021).  Under the L&I guidance, determining whether an employee is "Washington-based" requires a choice of law analysis focusing on several factors, including where the employee lives and how much of the work was performed in Washington.  *Id*.

For this reason, the Washington settlement class includes Washington residents *as well as drivers who drove 40% or more of their time in Washington during the relevant period*, a definition designed to include all drivers who would likely be considered "Washington based" under the test from L&I.  *See* Dkt. 36-1, at Exh. 1 ¶3.b.

Plaintiff Connell is in the Washington class because Defendant's records indicate she drove more than 40% of her time in Washington.  Ongaro Dec., ¶ 11.  Defendant does

not concede that Ms. Connell has standing to bring Washington-law claims, but recognizes ambiguity in Washington law as applied to drivers such as Ms. Connell or other non-resident drivers who drive substantial portions of time in Washington

### ii.  The Parties Had Reason to Settle Meal and Rest Claims.

PIs next claim that the settlement "attempts to release state law claims that were dismissed earlier in the action, even though they are live in other actions . . . ." Dkt. 50, at 9:15-18.  As described above, and as this Court is aware, the meal and rest breaks in this case were dismissed based on clear authority that they were preempted.  *See* Dkt. 21.  The fact that meal and rest break claims are "live in other actions" is no indication that the claims are legally viable, much less valuable, simply that Defendant has not yet challenged them.  Indeed, the legal landscape for meal and rest break claims under Washington and California law has only worsened since this Court (correctly) dismissed those claims. *See, Int'l Bhd. of Teamsters, Local 2785 v. Fed. Motor Carrier Safety Admin.*, 986 F.3d 841 (Jan. 15, 2021) (affirming FMCSA opinion that California meal and rest break claims on behalf of truck drivers are preempted by federal law); 85 FR 7335-02, 2020 WL 6710503 (FMCSA order concluding that Washington meal and rest break laws are preempted as to truckers); *Sales v. United Rd. Svcs, Inc.*, 2020 WL 4035072, at *3 (ND. Cal. 2020) (dismissing truck drivers' California meal and rest break claims because of FMCSA ruling such claims are preempted by federal law).

Thus, meal and rest break claims brought by Freitas (or any driver) are valueless. But the FMCSA may change its position, so there remained some risk the claims would become viable again.  Thus, Defendant insisted on a release including those claims.

### iii.  Plaintiffs Had Grounds to Amend Their Complaint to Bring "Sleeper Berth" Claims.

PIs' real issue with the settlement in this case is that Plaintiff Connell amended her complaint to (1) add Plaintiff Adams; and (2) bring additional claims, including the "sleeper berth" claim to which apparently PIs believe they have exclusive rights.

But both Plaintiffs would have been members of PI Freitas' proposed FLSA

Collective, because they were long-haul truckers who at least sometimes slept in their trucks.  *See* Dkt. 39 (FAC), ¶¶ 20-27.

### iv.  Modifications to the Notice and Settlement.

PIs Freitas and Calvert purport to seek intervention for purposes of challenging the notice and notice procedure, but do not provide any details about why they believe the notice and notice procedure are inadequate.  However, PIs Fosse and Christensen complain that the settlement contains a general release that they claim is not included in the notice.  Dkt. 55-1, at 11:22-12:5, 16:16-18, 18:6:13.  They are wrong.

The proposed notice of settlement that this Court originally approved informs the reader that the release applies to "all claims, whether known or unknown, that were or could have been alleged or asserted in the Action based on the facts alleged in the operative Complaint…".  *See* Dkt. 36-1, Exh. 2, at p. 6. ( "8. What am I giving up to get a payment and join the Class and/or Collective?").  Moreover, the Parties executed an addendum to the settlement clarifying that the general release is limited to claims that were or could have been alleged in the First Amended Complaint, and to add a section to the Notice making this clear as well.  Dkt. 62.

The Parties also struck the provision that would return any un-awarded attorneys' fees to Defendant, instead sending it to members of the FLSA Settlement Collective.  *Id*.  Finally, the Parties have extended the opt-in/opt-out period to 60 days, agreed to email notice, and required skip-tracing for notice packets that are returned as undeliverable.  *Id*.

The Parties do not believe these modifications were necessary; this Court reviewed the notice packet and procedure and found them to be adequate.  But the Parties are happy to make the modifications to ensure members of the class receive notice and have ample time to decide whether and how to participate in the settlement.

### III.  LEGAL ARGUMENT

#### A.  PIs' Motion Should Be Denied As Moot.

PIs claim they seek to intervene for three "limited purposes": (1) to stay

dissemination of the class settlement notice "pending resolution of this motion to intervene," (2) and "if leave to intervene is granted, a motion for reconsideration of the preliminary approval order," and (3) to "oppose any motion for final approval of the settlement." Dkt. 50, at 18:8-16.

Even if they satisfied the requirements for intervention of right or permissive intervention (as explained below, they do not), the "limited purposes" for which PIs seek to intervene is moot.

First, the idea that PIs wish to intervene to stay dissemination of the class settlement notice *pending* resolution of this motion to intervene is circular. The Court already approved the settlement notice and notice will have been sent before the instant motion to intervene is heard. If PIs wished to halt dissemination of the notice, they should have sought emergency relief from the Court weeks ago.

Second, PIs could not move for reconsideration of the preliminary approval order, as more than 14 days have elapsed since entry of the Order. L.R. 7-18.

Third, even if this Court were to waive the timing requirements of the Local Rules, PIs could not meet the Central District's standards for a motion for reconsideration. *Id.* (motion for reconsideration "may only be made on grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered.").

There are no material differences in fact or law from that presented to the court that PIs could not have known at the time the Order was entered, and no new material facts or change of law occurring after the Order was entered. And of course, this Court certainly did not demonstrate a "manifest" failure to consider material facts that were presented to it. This Court took a hard look at the settlement terms, notice, and notice

procedure, and granted preliminary approval.  PIs' belief that they are better than this Court at determining whether a proposed notice is fair and reasonable is simple hubris.

Finally, as discussed more completely below, PIs need not intervene to "oppose any motion for final approval of the settlement."  That procedure is better known as "objecting to the settlement," and intervention is not necessary to object. In fact, objecting is the procedural equivalent of intervention in a class action settlement.  *See Wershba v. Apple Computer, Inc.*, 91 Cal.App.4[th] 224, 245 (2001) ("In the context of a class settlement, objecting is the procedural equivalent of intervening.").

Intervention should be denied because PIs' purported "limited" reasons for intervention are moot.

### B.    PIs Cannot Intervene of Right.

#### i.    Legal Standard for Intervention of Right.

The Ninth Circuit has summarized the requirements for intervention of right to be: (1) the application must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action." *Apple Inc. v. Iancu*, 2021 WL 411157, at *3 (N.D. Cal. Feb. 5, 2021) (quoting *Freedom from Religion Fdn. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011).

A proposed intervenor seeking to intervene as a matter of right must satisfy all four criteria; "failure to satisfy any one of the requirements is fatal to the application. *Id*. (quoting *Perry v. Prop. 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

#### ii.    PIs' Motion is Untimely.

Timeliness is a "threshold requirement" of intervention as of right. *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).  In determining whether a motion to intervene is timely, courts consider three factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) prejudice to

other parties; and (3) the reason for and length of the delay.  *County of Orange v. Air Calif.*, 799 F.2d 535, 537 (9th Cir. 1986).  All factors favor a finding of untimeliness.

First, the stage of the proceedings is quite advanced, with preliminary approval of a global class and collective action settlement already in place, an administrator selected and notice about to be issued.  The case is winding down, yet PIs seek to relitigate issues the Parties have agreed to resolve on fair and reasonable terms.

Second, permitting intervention would undo the gains Plaintiffs won for the class on exceedingly weak claims.  Absent class members would be prejudiced by having to wait longer for any relief, which would not be guaranteed if PIs wrest control, refuse to proceed with settlement and lose on the merits, which is likely given the facts.

Finally, there is no excuse for PIs' late-stage intervention bid.  PIs claim their motion to intervene is timely because they brought it "within three weeks of learning about this action and the *Connell* parties' collusive negotiations, and after expiration of the post-meet and confer waiting period in Local Rule 7-3."  Dkt. 50, at 14:16-22. But filing a motion to intervene "as soon as [the proposed intervenor] learned of the lawsuit" is "unpersuasive because timeliness depends on when an intervenor 'should have known' about the lawsuit, not when an intervenor had actual knowledge of the suit."  *Gatdula v. Crst Int'l, Inc.*, 2015 WL 12778350, at *4 (C.D. Cal. 2015).

PIs claim they could not have known about this action through conducting their due diligence prior to filing, because this case was filed after *Freitas*.  But that is an oversimplification.  Had PIs done their diligence, they would have discovered the *Christensen* matter, which was filed on almost a full year before *Freitas* was filed. From *Christensen,* PIs would have learned about this case when the Parties filed their Joint Statement in Advance of Case Management Conference, which was filed over a year ago, on February 18, 2020.  *See* RJN, Exh. 9.  PIs should have known about this case by that date. A motion filed a year later on the eve of settlement is not timely.

Even assuming the timeliness analysis runs from the date they were told about this case (despite there being no obligation to do so), PIs were remarkably slow in

seeking intervention in this case.  PIs' counsel learned about the settlement on February 26, 2021.  Dkt. 50-1, ¶ 2.  Upon learning about the settlement, PIs' counsel knew or should have known that notice would issue imminently, but they waited almost a month to seek to intervene on a regularly noticed motion that will be heard more than two months after the preliminary approval order issued.  Had PIs' concern been about the notice contents or procedure, PIs should have acted swiftly and sought *ex parte* relief, at minimum for their motion for intervention to be heard on shortened notice.  To prevent dissemination of notice, PIs did not act diligently and the motion is not timely.  To challenge final approval, PIs need not intervene and the motion is moot.

### iii.   PIs' "Significant Protectable Interest" Does Not Extend to A Right to Prosecute Class or Collective Claims.

A proposed intervenor has a "significant protectable interest" if it asserts an interest that is protected under some law, and there is a relationship between the interest and the plaintiffs' claims.  *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).

While Defendant concedes that PIs have significant protectable interests *as individuals*, that right is easily protected absent intervention, by objecting to or not participating in the settlement. The real "right" PIs wish to protect is not their individual, already-protected right; it is their desire to bring class and collective claims, and to try to secure a higher settlement of the weak sleeper berth claims.  Of course, PIs cited no authority for the proposition that they enjoy some protectable "right" to prosecute class and collective claims – or that *their* right for some reason trumps Plaintiffs' right to prosecute and settle those claims.  Being the "first filed" does not endow PIs with any special status or right of first refusal to Defendant's willingness to settle claims.  If it did, PI Christensen would hold that non-existent right

### iv.   PIs' Can Protect Their Interests Absent Intervention.

PIs' argue that their interests will be impaired unless they are permitted to intervene because, in essence, they think the settlement should be higher.  This argument ignores the fact that their interests are actually protected by their right to opt

1    out of or not participate in the settlement.

2         Perhaps PIs ignore this fact because they know that court after court, throughout

3    California, this Circuit, and the country, deny intervention to unnamed members of a

4    settlement class, for exactly this reason: because the intervenors (and the putative

5    classes they often seek to represent) can protect their interests by opting out of or

6    objecting to a Rule 23 settlement class, or declining to participate in an FLSA

7    settlement collective. *See, e.g., Zepeda v. PayPal, Inc.*, 2014 WL 1653246, at *4 (N.D.

8    Cal. 2014) ("courts have frequently denied intervention in the class action settlement

9    context, citing concerns about prejudice, as well as putative intervenors' ability to

10   protect their interests by less disruptive means" such as opting out or objecting);

11   *Raquedan v. Centerplate of Delaware Inc.*, 376 F.Supp.3d 1038, 1041 (N.D. Cal. 2019)

12   (collecting cases); *Hughes v. S.A.W. Ent., Ltd.*, 2019 WL 2060769, at *15 (N.D. Cal.

13   2019) ("Even assuming that these plaintiffs were part of the proposed *State Roe*

14   settlement class, they could have protected their rights and prevented a release of their

15   claims by opting out of the settlement."); *Davis v. J.P. Morgan Chase & Co.*, 775

16   F.Supp.2d 601, 605 (W.D.N.Y. 2011) ("The proposed intervenors' interests in this

17   action can be fully protected at the fairness hearing or final approval of the settlement.

18   [Cite] In addition, any class members who do not want to be bound by the settlement

19   will be given an opportunity to opt out and pursue their own claims separately.");

20   *Hofstetter v. Chase Home Finance, LLC,* 2011 WL 5415073, at *2-3 (N.D. Cal. 2011)

21   (same); *Cohorst v. BRE Properties, Inc.*, 2011 WL 3475274, at *6 (S.D. Cal. 2011)

22   ("Roman is able to opt-out of the class and pursue her own damages action against

23   Defendants. Alternatively, Roman may raise any objections to the settlement at the

24   time of the Final Hearing. . . . Accordingly, the court concludes that Roman fails to

25   demonstrate that she is entitled to intervene as a matter of right in this action.").

26       The single case PIs cite in which they claim intervention was granted at the

27   "settlement stage" of a class action was a request by members of the settlement class

28   to intervene as representatives and appoint alternative class counsel because the

original class counsel had lost approximately $3.5 million dollars of the $3.55 million settlement fund by buying and selling stocks through an online brokerage account. *Lubocki v. ZipRealty, Inc.*, 2009 WL 10670958, at *1 (N.D. Cal. 2009).  That is hardly an analogous set of facts to the case at bar.

Other cases PIs cite to support their argument that they have a "significant protectable interest" ultimately nonetheless denied intervention, or presented extraordinary circumstances not analogous to this case.  *Asghari v. Volkswagen Grp. of Am., Inc.*, 2015 WL 12732462, at *38 (C.D. Cal. 2015) (denying intervention); *Lane v. Wells Fargo Bank, N.A.*, 2013 WL 3187410, at *13 (N.D. Cal. 2013) (denying intervention); *Murphy v. Best Buy Stores, L.P.*, 2020 WL 8461749, at *4 (C.D. Cal. 2020) (plaintiff had died).

### v.   PIs' Interests Are Adequately Protected.

Where the "applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation." *Prete v. Bradbury*, 438 F.3d 949, 957 (9th Cir. 2006).  Here, PIs' and Plaintiffs' interests are identical: they are drivers seeking to recover for putative wage and hour violations despite having already settled those claims through prior settlements.  PIs therefore need to make a "compelling showing" to establish inadequate representation.

PIs fail to make a compelling showing of inadequate representation.  Their motion makes clear that PIs' inadequacy arguments are disguised challenges to the validity and terms of the settlement itself.  *See* Dkt. 50, at 17:6-20 (arguing PIs' claims are not adequately represented because "the settlement appears to be collusive, rushed, and paltry in comparison to recoveries achieved in analogous settlements.").  Those challenges should be raised at the final fairness hearing, and are not relevant to the instant inquiry.  Defendant nonetheless addresses them below, in section D.

Setting aside the irrelevant and invalid "collusive, rushed and paltry" accusations, PIs' remaining claims about inadequate representation do not stand up to scrutiny.  First, they claim that their rights are not adequately protected because the

---

settlement resolves all outstanding wage and hour claims brought against Defendant. Plfs' Resp., at 4:16-5:9. Yet, PIs cite no authority that suggests a defendant must either continue defending multiple lawsuits or settle with a particular plaintiff – whether it is the plaintiff with the earliest filed action, or the plaintiff with the most claims.

PIs' claim that they "vigorously litigated the same claims" is inconsequential and presumes (incorrectly) that Plaintiffs did not adequately investigate the claims, despite Counsel's sworn declaration about extensive exchange of information in connection with negotiating and finalizing the settlement. *See* Dkt. 36-1, at ¶¶ 11-14.

Moreover, PIs hardly "vigorously litigated" the case: they sent some written discovery and took one deposition in a year and a half of litigation. Moreover, they failed to immediately bring a motion for conditional certification under the FLSA or opt in any FLSA members beyond PIs Freitas and Calvert, resulting in the loss of nearly a year and a half of FLSA claims due to the fact that the statute of limitations continues to run for FLSA members who have not opted in. Allowing the statute of limitations to run for nearly a year and a half is not vigorous litigation.

Next, PIs claim that Plaintiffs did not "ever consider[] litigating" the FLSA claims. Dkt. 50, at 17:10-12. But Plaintiffs' counsel are putative class counsel on other "sleeper berth" trucking claims, so it is doubtful that they did not consider the claims – they probably just accurately concluded they were not strong claims given Defendant's policies and pay structure. *See McNutt v. Swift Transportation Co. of Az., LLC*, 2020 WL 38192329 (W.D. Wa. Jul. 7, 2020).

There is no evidence that PIs' interests – which overlap exactly with Plaintiffs' claims – are not adequately protected here. This factor weighs against intervention.

### C.   PIs Do Not Meet the Standard for Permissive Intervention.

#### i.   Legal Standard for Permissive Intervention.

Permissive intervention requires (1) a timely motion; (2) an independent ground for jurisdiction; and (3) a common question of law and fact between the movant's claim

or defense and the main action." *Freedom from Religion Fnd.*, 644 F.3d at 843.[4]  Even if an applicant satisfies those threshold requirements, however, "the district court has discretion to deny permissive intervention." *Donnelly*, 159 F.3d at 412.  Permissive intervention is "committed to the broad discretion of the district court." *Orange v. Air Cal.*, 799 F.2d 535, 539 (9th Cir. 1977).  In exercising its discretion, this Court must consider whether intervention will "unduly delay the main action or will unfairly prejudice the existing parties." *Donnelly*, 159 F.3d at 412.

Where the addition of plaintiffs in intervention would "unnecessarily delay and complicate" the case, denying intervention is appropriate. *Montgomery v. Rumsfeld*, 572 F.2d 250, 255 (9th Cir. 1978) ("The district judge acted well within his discretion when he decided that 13 additional plaintiffs would unnecessarily delay and complicate the case, and that decision is also affirmed."). On this ground alone, PIs should not be permitted to intervene, as their motion makes clear that they intend to attempt to blow up the settlement entirely, rather than raise their (unjustified) concerns using the procedure already provided for in the Federal Rules.

### ii.  This Court Should Deny Permissive Intervention.

Even if this Court concludes that PIs have established that the Motion is timely (it is not), this Court should nonetheless exercise its discretion and deny intervention because granting it would unnecessarily delay and complicate the case.  PIs' "limited purposes" for intervening are all directed at preventing this settlement from proceeding, because PIs' do not like it.  That would mean that thousands of settlement class members would be denied the relief the settlement provides for them.  Such a dramatic outcome for thousands of people is unnecessary when PIs' rights and concerns can and will be addressed fully by this Court at the final fairness hearing.

### D.  PIs' Various Attacks on the Settlement Terms and Approval Process Are Irrelevant to the Intervention Analysis.

---

[4] For the same reasons noted above, the Motion is not timely.

Finally, PIs' gather and sling mud at the Parties, accusing them of reaching a collusive settlement.  While collusion really should be considered at the final fairness hearing, Defendant addresses the arguments here.

### i.  The Agreement to File An FAC Was Valid.

PIs point to the fact that the parties' stipulated for Connell to file an amended complaint as part of the settlement.  This is no sign of collusion; rather, it is a sign that Defendant was seeking to reach a comprehensive settlement of many overlapping claims brought by different plaintiffs with nearly identical claims.  PIs have not articulated why individuals with cognizable (if weak) claims cannot amend their complaint to bring those claims as part of a global resolution of pending litigation.

Defendant recognizes it did not formally notify this Court about the other lawsuits.  Defendant notified Plaintiffs, and followed state court rules regarding disclosure of related cases. There was no nefarious effort to keep the fact of these publicly-filed lawsuits a secret, and their existence was part of the Parties' settlement negotiations, demonstrated by the fact that their claims are encompassed herein.

### ii.  The Settlement Is Not a "Paltry" Settlement of "Valuable Claims" for "Pennies in the Dollar."

PIs' next attack on the settlement is that it is "paltry by comparison to settlements achieved in analogous cases – likely because it does not achieve a recovery for the sleeper berth claims that comes anywhere close to fair value," pointing to *Julian v. Swift Transp. Co.*, *Ridgeway v. Wal-Mart Stores, Inc.*, *Haworth v. New Prime, Inc.*, and *Browne v. P.A.M. Transp.* as these supposedly "analogous" cases.   Dkt. 50, at 9:19-10:7.  But the cases PIs cite are not remotely "analogous."

*Julian* and *Hawarth* were both about pay for drivers in training.  *Julian*, 2020 WL 6063293, *1 (D. Ariz. 2020) ("this litigation involves the approximate six week period Plaintiffs spent in training"); *Haworth*, 448 F.Supp.3d 1060, 1063 (W.D. Mo. 2020) ("Plaintiff alleges that Prime failed to pay him and other 'B-seat' drivers the minimum wage in violation of the FLSA and state law.  Prime's B-seat drivers are

required to drive as a team with 'A-seat' drivers for a certain number of miles before they can be promoted to become A-seat drivers."). Drivers in training such as those at issue in *Julian* and *Haworth* are paid substantially less than drivers who have completed training and are fully licensed commercial drivers (such as the drivers here), which increases the value of trainees' claims and makes settlements more likely to be higher. *See, e.g., Haworth*, 488 F.Supp.3d at 1063 (B-seat drivers paid $700/week).

*Ridgeway v. Wal-Mart* is also inapposite, as it involved employer policies that severely restricted drivers' ability to use sleeper berth time as they wished, including a requirement that drivers receive permission to sleep at home. *Ridgeway*, 946 F.3d 1066, 1083 (9th Cir. 2020). Those issues are not at play with Defendant's drivers, who are fully released from duty and free to use their 10-hour reset time as they please, and sleep where they wish. *See* RJN, Exhs. 11-23. *Browne* involved claims of 16,000 drivers (approximately 7,000 more drivers than at issue in *Connell*) and serious allegations of the employer taking unlawful deductions from drivers' pay and charging usurious interest rates on wage advances, entitling employees to damages in the amount of both the advance and the fee. *See* 2020 WL 4430991, *2, *4 (W.D. Ark. 2020) Again, there are no such issues in the claims against Heartland.

Moreover, many courts deny class certification on sleeper berth claims, or reject the claims outright, *including the Ninth Circuit*, which affirmed a district court ruling that sleeper berth time is not compensable under the FLSA. *Nance v. May Trucking Co.*, 685 Fed.Appx. 602, *605 (9th Cir. 2017) (unpub.) ("the district court properly relied on the persuasive authority of federal and state regulations saying drivers are not entitled to compensation for time they are permitted to sleep in the berths of moving trucks."); *Dueker v. CSRT Exped. Inc.*, 2020 WL 7222095, *7 (C.D. Cal. 2020) (denying class certification in part because of individualized issues regarding sleeper berth time); *Blodgett v. FAF, Inc.*, 446 F.Supp.3d 320, 328 (E.D. Tenn. 2020) (applicable DOL regulation "creates the presumption that the time Plaintiff spends sleeping is not compensable."); *Kennedy v. LTI Trucking Services, Inc.*, 2019 WL

4394539, *3 (D. Mo. 2019) ("Plaintiff is not entitled to the presumption that her sleeper berth time was compensable."); *Petrone v. Werner Enterp., Inc.*, 2017 WL 510884, *7 (D. Neb. 2017) ("time in the sleeper berth is presumably non-compensable").

Indeed, even a jury found that sleeper berth time was not compensable because the drivers were not required or allowed to work during time logged in the sleeper berth. *See Petrone v. Werner Enterprises, Inc.*, 2018 WL 816250, *1 (D. Neb. 2018) ("Following the three-day trial, . . . the jury found that Plaintiffs failed to demonstrate that Werner required or allowed Plaintiffs to work during time logged in the sleeper berth in excess of eight hours in each 24-hour period."). The declarations Defendant provided in support of its Response to PIs' Motion for Conditional Certification establish that Defendant's long-haul drivers can *and do* spend their off-duty 10-hour reset (or "sleeper berth") time as they wish, do not need to ask permission to sleep at home, and do not expect to be compensated for their sleeper berth time.

### iii. Announcing a Settlement Before It Is Final and the Court Preliminarily Approves It Is Premature.

PIs make much of the fact that the Parties did not announce the settlement before it was final and this Court had preliminary approved it. But alerting competing plaintiffs that Defendant has reached a settlement in principle is premature prior to preliminary approval. Prior to that date, the settlement is still subject to additional negotiations and the rigorous approval process. Here, the Parties continued to exchange information and refine the terms of the agreement for four months after reaching an agreement in principle.

Finalizing a settlement is always a dance between adversarial parties. Informing competing plaintiffs of a nascent settlement during the process of negotiating the terms and seeking court approval would only jeopardize the already tricky process of finalizing a nationwide class action settlement. Defendant posits that this is why there is no requirement that parties to a settlement need to send word of the settlement to any and all other parties who may want to disrupt the settlement process.

### iv. The Existence of Other Litigation With No Certified Classes Is Irrelevant to the Preliminary Approval Inquiry.

PIs' complaint that Plaintiff did not notify the Court about the other litigation at the preliminary approval stage is inconsequential.  None of the litigation was at such an advanced stage that there was any argument that those other claims are better situated to litigate these claims.  Indeed, *every PI* has released some, if not all, of their claims through prior releases and the break claims are not viable in any of the cases.

Further, no other putative class representative had a certified or conditionally certified class they represented.  Defendant appreciates PIs' confidence, but the reality is that they have presented no concrete evidence that they would ever have secured a better result than the settlement that this Court reviewed and preliminarily approved.

Plaintiffs presented evidence and argument regarding all the factors this Court needed to consider as part of the preliminary approval motion.  "Overlapping litigation with no certified classes, headed by plaintiffs who already released most of their claims but will still complain that this settlement is not rich enough" was not one of those factors, and even if it had been considered, it would not have changed the outcome.

### E.    Dissemination of Notice Should Not Be Stayed.

Plaintiffs provided the Court with all information necessary to determine whether notice was appropriate.  The notice accurately describes the claims, the releases, and informs recipients of the implications and mechanics of staying in or opting out of the settlement.  There is a "QR Code" to facilitate opting into the FLSA agreement. Notice will be emailed, and there will be 60 days to opt in, opt out, or object. This Court already thoroughly reviewed the notice to determine whether it should issue. That decision should not be disturbed. Moreover, while notice is still being finalized because of the complexity of overlapping workweeks, it will have been issued by the time this Motion is heard.

### IV.    CONCLUSION

Based on the foregoing, Defendant requests this Court deny the motion.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  April 5, 2021

**ONGARO PC**

By: _____
DAVID R. ONGARO
CARA R. SHERMAN
Attorneys for Defendant
HEARTLAND EXPRESS, INC. OF IOWA
Incorrectly sued as
HEARTLAND EXPRESS, INC.

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of San Francisco, State of California.  My business address is 1604 Union St., San Francisco Califrnia 94123.

On April 5, 2021 I served a true and correct copy of the documents described as:

**DEFENDANT'S OPPOSITION TO PROPOSED INTERVENOR FREITAS AND CALVERT'S MOTION TO INTERVENE AND STAY DISSEMINATION OF NOTICE OF SETTLEMENT**

I served this document on the interested parties in this action as follows:

**Counsel for Plaintiff**
Joshua Haffner
Graham G. Lambert
HAFNER LAW PC
445 South Figueroa Street, Ste. 2625
Los Angeles, CA 90071


**SERVICE BY ECF**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 5, 2021 at San Francisco, California.


_____
Christine Gill