Joshua H. Haffner, SBN 188652
(*jhh@haffnerlawyers.com*)
Drew R. Ferrandini, SBN 285102
(*df@haffnerlawyers.com*)
**HAFFNER LAW PC**
445 South Figueroa St., Suite 2625
Los Angeles, California 90071
Telephone: (213) 514-5681
Facsimile: (213) 514-5682

Attorneys for Plaintiffs Jacqueline Connell
and all others similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE CONNELL, an individual: on behalf of herself and all others similarly situated, and FRANCINE ADAMS, an individual: on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEARTLAND EXPRESS, INC. OF IOWA; AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>Defendants. | Case No. 2:19-cv-09584-RGK-JC<br><br>**PLAINTIFFS' NOTICE OF RENEWED UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FLSA COLLECTIVE ACTION SETTLEMENT**<br><br>Date: June 17, 2021<br>Time: 9:00 A.M.<br>Courtroom: 850<br><br>Complaint Filed: November 7, 2019<br>Trial Date: February 16, 2021<br>District Judge: Hon. R. Gary Klausner |

i

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 17, 2021 at 9:00 a.m., in Courtroom 850 of this Court, located at 350 West 1st Street, Los Angeles, CA 90012, Plaintiffs Jacqueline Connell ("Connell") and Plaintiff Francine Adams ("Adams") (together "Plaintiffs"), individually and on behalf of all others similarly situated, will, and hereby do, renew their Motion to the Court pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b) for an order:

1) Preliminarily approving the Settlement Agreement between Plaintiffs and Defendant Heartland Express, Inc. of Iowa ("Defendant"), on the grounds that its terms are sufficiently fair, reasonable, and adequate for notice to be issued to the Classes;

2) Certifying proposed settlement classes under California and Washington law for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(c);

3) Certifying proposed FLSA settlement collective for settlement purposes only, pursuant to 29 U.S.C. § 216(b);

4) Approving the form and content of the proposed notice, and notice plan, including opt-in form for the FLSA Collective and request for exclusion form for the Rule 23 Classes, and Adjustment form;

5) Appointing Joshua H. Haffner and Graham G. Lambert of Haffner Law PC as the Class Counsel;

6) Scheduling a hearing regarding final approval of the proposed settlement, Class Counsel's request for attorneys' fees and costs, and enhancement payments to the named Plaintiffs;

7) Removing all current deadlines and hearings  from the calendar; and

8) Granting such other and further relief as may be appropriate.

This Motion is based on this Notice of Motion and Motion; the Memorandum

ii

of Points and Authorities filed herewith; the Declaration of Joshua H. Haffner filed concurrently herewith; all supporting exhibits filed concurrently herewith; all other pleadings and papers filed in this action; and any argument or evidence that may be presented at or prior to the hearing in this matter.

Counsel for Defendant has indicated that Defendant does not oppose this Motion and the requested relief.

DATED:  May 17, 2021                              **HAFFNER LAW PC**

By:  */s/Joshua H. Haffner*
Joshua H. Haffner
Attorneys for Plaintiffs

PLFS' RENWEWED UNOPPOSED MTN. FOR PRELIM. APPROVAL OF CLASS & COLLECTIVE SETTLEMENT

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................ 1

II.     FACTUAL BACKGROUND.............................................................. 2

A.      Litigation History and Operative Complaint............................... 2

B.      Discovery and Investigation. ....................................................... 3

C.      Prior Settlements and "Safe Harbor" Payments. ........................ 3

D.  Related Pending Lawsuits............................................................ 4

III.    TERMS OF THE SETTLEMENT ..................................................... 5

A.      The Settlement Classes. ............................................................... 5

B.      Monetary Relief and Calculation of Awards................................ 5

C.      Releases. ....................................................................................... 6

D.      Allocation of Monetary Relief. .................................................... 7

E.      Notice Plan.................................................................................... 7

IV.     LEGAL STANDARD ......................................................................... 8

V.      THE SETTLEMENT SHOULD BE PRELIMINARY
        APPROVED. ................................................................................... 10

A.      The Settlement Is A Product of Serious, Informed, Non-
        Collusive Negotiations................................................................ 10

B.      The Settlement Has No Obvious Deficiencies. .......................... 10

        1.      The Release Is Tailored to the Complaint. ........................ 11

        2.      The Notice Provides Adequate Notice to Class
                Members.............................................................................. 11

        3.      The Rule 23 Settlement Is Non-Reversionary. .................. 12

        4.      Attorneys' Fees. ................................................................. 12

D.      The Settlement Falls Within the Range of Possible Approval.............. 12

E.      The Remaining Factors Favor Preliminary Approval. ........................ 19

VII.    CERTIFICATION OF THE RULE 23 CLASSES IS
        APPROPRIATE. ............................................................................. 21

iv

A.  The Proposed Settlement Classes Satisfy Fed. R. Civ. P. 23(a)................ 21

    1.    The Proposed Classes Are Numerous................................ 21

    2.    There Are Common Questions of Law and Fact. .............. 22

    3.    Plaintiffs' Claims Are Typical. ........................................ 23

    4.    Plaintiffs and their Counsel are Adequate. ....................... 24

B.    The Settlement Class Satisfies Fed. R. Civ. P. 23(b). ............................ 24

V.    THE FLSA COLLECTIVE SHOULD BE CONDITIONALLY CERTIFIED FOR PURPOSES OF SENDING NOTICE. ................................................................. 25

VIII. CONCLUSION............................................................................. 25

PLFS' RENWEWED UNOPPOSED MTN. FOR PRELIM. APPROVAL OF CLASS & COLLECTIVE SETTLEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Federal Cases**

*Acosta v. Trans Union, LLC*,
   243 F.R.D. 377, 396 (C.D. Cal. 2007).................................................................10

*Aguirre v. Genesis Logistics*,
   2015 WL 3755239 (C.D. Cal. June 16, 2015).................................................16

*Barbosa v. Cargill Meat Sols. Corp.*,
   297 F.R.D. 431, 441 (E.D. Cal. 2013)...............................................................21

*Castillo v. Bank of America, NA*,
   980 F.3d 723 (9th Cir. 2020).................................................................................22

*Cotter v. Lyft, Inc.*,
   193 F. Supp. 3d 1030 (N.D. Cal. 2016)...........................................................11

*Deaver v. Compass Bank*,
   2015 WL 4999953 (N.D. Cal. 2015)..................................................................11

*Does 1-2 v. Déjà vu Servs., Inc.*,
   925 F.3d 886 (6th Cir. 2019)...............................................................................20

*Guifu Li v. A Perfect Day Franchise, Inc.*,
   2012 WL 2236752 (N.D. Cal. June 15, 2012)..................................................15

*Harris v. Vector Mktg. Corp.*,
   753 F. Supp. 2d 996 (N.D. Cal. 2010)..............................................................25

*Johnson v. General Mills, Inc.*,
   278 F.R.D. 548, 552 (C.D. Cal. 2012)..............................................................23

*Kerzich v. County of Tuolomne*,
   335 F.Supp.3d 1179 (E.D. Cal. 2018)................................................................9

*Litty v. Merrill Lynch & Co., Inc.*,
   2015 WL 4698475 (C.D. Cal. 2015)....................................................................9

*Lundell v. Dell, Inc.,*

  2006 WL 3507938 (N.D. Cal. 2006) ................................................................ 13

*Ma v. Covidien Holding, Inc.,*

  2014 WL 360196 (C.D. Cal. 2014) ................................................................ 18

*Misra v. Decision One Mortg. Co., LLC,*

  673 F. Supp. 2d 987 (C.D. Cal. 2008) ........................................................... 25

*Murillo v. Pacific Gast & Elec. Co.,*

  266 F.R.D. 468 (E.D. Cal. 2010) .................................................................. 22

*Noll v. eBay, Inc.,*

  309 F.R.D. 593 (N.D. Cal. 2015) .................................................................. 24

*Rodriguez v. West Publishing Corp.,*

  563 F.3d 948 (9th Cir. 2003) ........................................................................ 9

*Satchell v. Fed. Express Corp.,*

  2007 WL 1114010 (N.D. Cal. 2007 ............................................................. 10

*Silber v. Mabon,*

  18 F.3d 1449 (9th Cir. 1994) ........................................................................ 11

*Simpson v. Fireman's Fund Ins. Co.,*

  231 F.R.D. 391 ........................................................................................... 23

*Stockwell v. City & Cty. of S.F.,*

  749 F.3d 1107 ............................................................................................. 23

*Thompson v. Costco Wholesale Corp.,*

  2017 WL 1957552 (S.D. Cal. 2017) ............................................................. 18

*Villalpando v. Exel Direct, Inc.,*

  303 F.R.D. 588 (N.D. Cal. 2014) .................................................................. 22

*West v. Circle K Stores, Inc.,*

  2006 WL 1652598 (E.D. Cal. 2006) ............................................................. 22

PLFS' RENWEWED UNOPPOSED MTN. FOR PRELIM. APPROVAL OF CLASS & COLLECTIVE
SETTLEMENT

**State Cases**

*Amaral v. Cintas Corp. No. 2,*
   163 Cal.App.4th 1157 (2008) ................................................................14

*Bennett v. Heartland Express, Inc. of Iowa et al.*
   (San Diego Superior Court Case No. 37-2016-15056)..........................4

*Bostain v. Good Express, Inc.,*
   159 Wash.2d 700 (2007)........................................................................17

*Layton v. Gordon Trucking, Inc.*
   (King County Superior Court Case No. 17-2-00667-0 KNT) ...............4

*Numi v. Interstate Distributor Co.*
   (Alameda Superior Court Case No. RG15778541) ...............................4

*Plimpton v. Gordon Trucking, Inc.*
   (San Bernardino Superior Court Case No. CIV-DS1511918).........4, 5

*Stone v. Interstate Distributor Co.,*
   Pierce County Superior Court Case No. 15-2-14612-8 ........................4

*Villacres v. ABM Indus., Inc.,*
   189 Cal. App. 4th 562 (2010) ..............................................................15


**Statutes**

29 C.F.R §785.22(a) ...............................................................................15
Cal. Labor Code § 226.................................................................14, 15, 16
Cal. Labor Code § 226.3 ..........................................................................15
Cal. Labor Code § 558..............................................................................15
Cal. Labor Code § 2699(9f)(2) .................................................................15
Fed R. Civ. P. 23(a) .............................................................................20, 21

Fed R. Civ. P. 23(a)(2) ................................................................. 21, 22

Fed R. Civ. P. 23(b) ..................................................................... 20, 24

Fed R. Civ. P. 23(b)(3) ......................................................................... 25

Fed R. Civ. P. 23(b)(4) ......................................................................... 24

Fed R. Civ. P. 23(c)(3) .......................................................................... 11

Fed R. Civ. P. 23(e)(2) ............................................................................ 9

PLFS' RENWEWED UNOPPOSED MTN. FOR PRELIM. APPROVAL OF CLASS & COLLECTIVE
SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Jacqueline Connell and Francine Adams ("Plaintiffs"), as individuals and on behalf of all others similarly situated, renew their request that this Court preliminarily approve the settlement they have reached with defendant Heartland Express, Inc. of Iowa ("Defendant").  The Settlement will resolve the California, Washington and federal wage and hour claims Plaintiffs raise in their operative complaint, including claims for unpaid wages, failure to provide meal and rest periods, pay all wages due upon termination or resignation, reimbursement for work-related expenses, and inaccurate wage statements.  The terms of the settlement are reflected in the Joint Stipulation of Class Action Settlement and addendum thereto. *See* Dec. of Joshua Haffner ("Haffner decl."), Exh. 1.

Discussions and negotiations between counsel for the Parties, formal and informal disclosures, pre-mediation exchange of information, a full-day mediation, as well as the post-mediation confirmatory discovery have permitted both sides to accurately assess the merits of Plaintiff's claims and Defendant's defenses. The Parties agree that the investigation, evaluation and negotiation was sufficient to reach an informed, arm's length, equitable compromise of the dispute, and that it is desirable to settle the claims on the terms set forth in the Settlement Agreement.

In exchange for a release of claims, Defendant has agreed to a settlement that provides monetary relief for the California, Washington, and FLSA Classes, as defined in the Settlement Agreement. The settlement is a non-reversionary settlement fund in the amount of $2,390,000.00 as to the California and Washington Classes ("Washington and California Gross Fund").  Opt-ins to the FLSA Settlement Collective Class shall receive $3.61 per eligible workweek.  There is no maximum payout to the FLSA Settlement Collective Class.

This is an excellent result, considering the strengths and weaknesses of Plaintiff's claims and Defendant's defenses, the uncertainty of litigating the dispute

1

through trial and potential appeals, and unsettled law regarding whether the state law meal and rest break claims are preempted and the viability of the unpaid wage claim.

As this Court is aware, there are two active cases with claims that will be resolved in this Settlement. However, the existence of the overlapping litigation, including two sets of plaintiffs who have unsuccessfully sought to intervene and stated their intention to object to the settlement, do not change the analysis or create any bar to preliminary approval. Those plaintiffs have not succeeded in certifying or conditionally certifying any class, instead letting their cases move at a glacial pace. The Parties' agreement to reach a global resolution of all outstanding claims on just and reasonable terms is not collusive or otherwise problematic simply because there are other plaintiffs seeking a service award and attorneys' fees. On its face, the settlement is an excellent resolution of claims with uncertain value.

Plaintiffs submit that the Settlement should be preliminarily approved.

## II.   FACTUAL BACKGROUND

### A. Litigation History and Operative Complaint.

On November 7, 2019, Plaintiff Connell filed her Class Action Complaint in this Court on behalf of herself and all other similarly situated individuals, alleging wage and hour violations arising out of her employment with Defendant as a truck-driver. Dkt. 1. Plaintiff Connell's Complaint alleged various causes of action for California drivers, including: failure to provide rest breaks, failure to provide meal breaks, failure to pay minimum wages, failure to pay wages upon separation, failure to furnish accurate wage statements, violation of California's unfair competition act, and PAGA violations, and causes of action for Washington drivers for failure to provide breaks, pay minimum wage, and willful refusal to pay wages. *Id.*

On December 13, 2019, Defendant filed a motion to dismiss Plaintiff Connell's meal and rest break claims based on federal preemption pursuant to an order from the Federal Motor Carrier Safety Administration ("FMCSA") that California's meal and rest break laws were preempted as applied to DOT-regulated

2

drivers such as Plaintiff Connell. Dkt. 11.  The Court granted Defendant's motion and dismissed the meal and rest break claims.  Dkt. 21.  Thereafter, the Parties began settlement negotiations, and began exchanging documents and data in June and July 2020.  Haffner Decl. at ¶ 11.

On September 19, 2020, the Parties participated in an all-day private mediation session with Bruce Friedman, an experienced mediator with over 37 years of complex litigation experience, including extensive work in class actions.  *Id*. at ¶ 12.  The mediation was ultimately successful, and after continued exchange of confirmatory discovery the parties arrived at the Settlement Agreement that is memorialized in Exhibit 1 to the Declaration of Joshua H. Haffner.  *Id*., ¶ 13.

As part of the Settlement, the Parties stipulated that Plaintiff Connell would amend her complaint to add a second Plaintiff, Francine Adams, and the proposed First Amended Complaint was filed on January 11, 2021.  Dkt. 35.[1]

**B.    Discovery and Investigation.**

The Parties exchanged initial disclosures and extensive informal discovery. Haffner Decl. at ¶¶ 11-14. Defendant also informally produced information in advance of and after the mediation, including class sizes, workweeks, rates of pay, how pay is calculated, pay records, pay averages, and information on pay practices, sleeper berth policies and practices, and information about prior settlements.  *Id*.

**C.    Prior Settlements and "Safe Harbor" Payments.**

Defendant Heartland and its predecessors in interest settled prior wage and hour litigation which included some of the drivers Plaintiffs seek to represent, for

---

[1] The operative Complaint brings claims under California law for: (1) Failure to Provide Rest Periods; (2) Failure to Provide Meal Periods; (3) Failure to All Pay Wages, Including Minimum Wages; (4) Failure to Pay All Wages Due At Separation; (5) Failure to Furnish Timely And Accurate Wage Statements; (6) Failure to Reimburse Business Expenses; (7) Failure to Keep Accurate Payroll Records; (8) Violations of California's Unfair Competition Act; (9) Representative Action for PAGA Penalties; as well as claims under Washington law for (10) Failure to Pay Rest Breaks; (11) Failure to Pay or Provide Meal Breaks; (12) Failure to Pay All Wages Due and Payable for Compensable Time Including Time Under a Load; (13) Failure to Pay Overtime; (14) Failure to Pay All Wages At Termination; (15) Violation of Washington's Consumer Protection Act; (16) Willful Refusal to Pay Wages; and, finally, a claim under federal law: (17) Violation of the Fair Labor Standards Act (29 USC. §§ 201 *et seq*.). Dkt. 35.

portions of the class periods at issue.[2]    Defendant Heartland and GTI also made "safe harbor" payments pursuant to AB 1513, which provides an affirmative defense to claims for failure to pay all wages to employees paid on a piece-rate basis through December 31, 2015.  Haffner Decl., ¶ 16.

Plaintiff Connell participated in the *Plimpton* settlement but did not receive any safe harbor payments; Plaintiff Adams did not participate in any of the prior settlements or receive any safe harbor payments.  Haffner Decl., ¶ 17.

### D.    Related Pending Lawsuits.

There are three related lawsuits, two of which are pending and one of which has settled and been dismissed.  These have been identified in Defendant's Notice of Related Cases filed pursuant to Local Rules 83-1.3 and 83-1.4.  Dkt. 76.

*Freitas and Calvert v. Heartland Express, Inc. of Iowa*, was filed just two days before this action, on November 5, 2019 in the United States District Court for the Eastern District of Washington.  The two named plaintiffs have been deposed, as well as Heartland's Rule 30(b)(6) designee and a payroll employee.  There is a pending motion to conditionally certify the FLSA collective, but the *Freitas/Calvert* Plaintiffs have not moved for certification of their state-law claims under Rule 23. Declaration of David R. Ongaro In Support of Renewed Motion for Preliminary Approval of Class and Collective Action Settlement ("Ongaro Dec."), ¶ 2.

*Fosse v. Heartland Express, Inc. of Iowa, et al.*, was filed on November 15, 2018 in San Diego County Superior Court and *Christensen v. Heartland Express,*

---

[2] For the California Class, those settlements are *Plimpton v. Gordon Trucking, Inc.* (San Bernardino Superior Court Case No. CIV-DS1511918), releasing California and FLSA claims of long-haul, mileage-based drivers employed by GTI from June 19, 2011 to October 13, 2015; *Bennett v. Heartland Express, Inc. of Iowa et al.* (San Diego Superior Court Case No. 37-2016-15056), releasing California claims of long-haul, mileage-based drivers employed by Heartland from May 5, 2012 to June 1, 2017; and *Numi v. Interstate Distributor Co.* (Alameda Superior Court Case No. RG15778541), releasing California and FLSA claims of long-haul, mileage-based drivers employed by IDC from July 20, 2011 to March 3, 2017.  Haffner Decl., ¶ 15.  For the Washington Class, those settlements are *Layton v. Gordon Trucking, Inc.* (King County Superior Court Case No. 17-2-00667-0 KNT), releasing Washington and FLSA claims of long-haul, mileage-based drivers employed by GTI from January 11, 2014 to October 1, 2017; and *Stone v. Interstate Distributor Co.* (Pierce County Superior Court Case No. 15-2-14612-8), releasing Washington and FLSA claims of long-haul, mileage-based drivers employed by IDC from December 17, 2012 to July 6, 2017 (collectively, the "Prior Overlapping Settlements").  *Id.*

*Inc. of Iowa*, was filed on December 17, 2017 in San Bernardino County Superior Court.  In May 2019, Heartland had sought to coordinate the *Christensen* and *Fosse* cases; the petition to coordinate was granted on November 25, 2019 and assigned to Judge Cohen of San Bernardino County Superior Court.  Ongaro Dec., ¶ 3.[3]  The *Christensen/Fosse* plaintiffs' claims arise only under California law. They have not moved for class certification, and have not taken or sat for any depositions.  *Id*.

## III.    TERMS OF THE SETTLEMENT

### A.    The Settlement Classes.[4]

The Settlement sets forth the following settlement Classes (SA ¶ 3(a)-(c)):

**The "California Class"**: All current or former long-haul, over-the-road drivers employed by Defendant or its predecessors in interest as long-haul over-the-road drivers who drove in California at any time from December 20, 2013 through February 19, 2021.

**The "Washington Class"**:  All current and former drivers employed by Defendant or its predecessors in interest from November 5, 2015 forward, and who **either** (a) had a last known address in Washington; **or** who (b) drove 40% or more in Washington, from November 5, 2015 through February 19, 2021.

**The "FLSA Settlement Collective"**: All current or former drivers employed by Defendant or its predecessors in interest as long-haul mileage-based over-the-road drivers who actually received mileage-based pay for driving at any time from March 4, 2017 through February 19, 2021.

### B.    Monetary Relief and Calculation of Awards.

Under the terms of the settlement, Defendants will create a Gross Settlement Fund, which will consist of a non-reversionary Washington and California Gross

---

[3] *Curtis v. Heartland Express, Inc. of Iowa* was pending in state court in Washington, and the parties resolved the case on an individual basis in January 2021 and it was dismissed in April 2021.  Ongaro Dec., ¶ 4.

[4] Plaintiffs included the FLSA Settlement Collective here for reference and are aware that it is not a "class" subject to Rule 23 analysis and will be excluded from the remaining of the Rule 23 analysis where the analysis varies, such as for certification.  Plaintiffs provide a separate analysis under the FLSA.

Fund of $2,390,000.00, plus the total payment to the FLSA Collective Class ("Gross Settlement Fund"). SA ¶ 4. The Gross Settlement Fund will be split $1,682,614.94 to California and $707,385.06 to Washington. *Id.*, ¶ 4.f. This is approximately a 70/30 split and correlates to the adjusted number of weeks worked in each Class which is also approximately 70/30 (118,996 CA weeks to 50,693 WA weeks).

Payments to the Washington and California Classes will be *pro rata* based on total eligible workweeks worked by the class member as a proportion of the total eligible workweeks worked by the entire class. SA, ¶ 4.f.i.1, 4.f.ii.1. For the Washington Class, an eligible workweek will be a week where the Washington Class Member worked as a long-haul, over-the-road driver *anywhere* during the relevant period; for the California Class, an eligible workweek will be a week where the California Class Member worked any portion of the week in California. *Id.*

Payments to the FLSA Collective Class Members shall be calculated at $3.61 per week worked as a long-haul over-the-road truck driver. *Id.* at ¶4.f.iii.1. There is no maximum payout to the FLSA Collective Class. *Id.* at ¶4.f.iii.3.

Defendant believes that the releases in the Prior Overlapping Settlement releases and the safe harbor payments would operate to preclude all claims raised by the operative complaint for the putative class members who participated, during the relevant release periods. However, the Parties recognize that argument is subject to challenge, so these "overlapping" workweeks will count as 1/20th of a regular workweek. *Id.*, ¶ 4.f.i.2, 4.f.ii.2.

Finally, workweeks shall not be double counted: they shall either be a California workweek, a Washington workweek, an FLSA workweek, or a shared California-Washington workweek. *Id.*, ¶ 4.f.i.3, 4.f.ii.3. A driver can be a member of all three classes. Plaintiff Connell is a member of all three settlement classes and Plaintiff Adams is in the California and FLSA classes. Haffner Dec., ¶ 17.

**C.    Releases.**

In exchange for this monetary consideration, California and Washington Class

6

Members and participating FLSA Collective Class members will release all claims that were or could have been alleged based on the facts alleged in the operative complaint that relate to the respective Classes.  SA ¶¶ 5(i)-(v).

**D.    Allocation of Monetary Relief.**

The Gross Settlement Fund shall be $2,390,000.00, the Washington and California Gross Settlement Fund, plus the total payout to the FLSA Collective Class.  SA ¶ 4.  The Gross Settlement Fund shall be allocated as follows: (i) $100,000 to pay Settlement Administration Costs, split evenly between the California Class, Washington Class, and FLSA Collective Class ($33,333.33 per class); (ii) 20% of the Gross Settlement fund allocated to the Class Counsel Fees Award ($478,000 from the California and Washington Gross Settlement fund of $2,390,000, plus 20% of the total FLSA Collective damages); (iii) $7,090.75 allocated to the Class Counsel Costs Award, split evenly between the California Class, Washington Class, and FLSA Collective Class ($2,363.58 per class); and (iv) $10,000 allocated to Plaintiffs' service award, split evenly between the two Plaintiffs ($5,000 each) and paid equally out of the three classes ($3,333.33 per class); and $66,666.66 shall be awarded to PAGA penalties of which 75% ($50,000.00) shall be paid from the California Gross Settlement Fund to the California Labor and Workforce Development Agency. SA ¶¶ 4(a)-(f).

Assuming that all the California and Washington Class Members participate, the average gross recovery will be $178.29 per California Class Member and $319.65 per Washington Class Member.  If anyone opts-out, that will increase the recovery of those who participate in the California and Washington classes.

Each Participating FLSA Member will receive $3.61 per eligible workweek worked during the FLSA period.  The amount of an individual's recovery per eligible workweek will not change regardless of how many individuals participate.

**E.    Notice Plan.**

The settlement provides that a Notice Packet will be sent to Class Members

7

via US Mail and via e-mail to their last known physical and email addresses. Haffner Dec., Exh. 1, ¶ 9. The Parties believe this will be the most effective way to distribute notice, and electronic notice will increase the likelihood that individuals receive actual notice. Upon receipt of the class list based on Defendant's records, the Settlement Administrator will perform a search of Class Members' addresses using the National Change of Address Database to correct any known or identifiable address changes for Class Members. *Id*. Notice packets that are returned as undeliverable be skip-traced, and remailed to any updated addresses. *Id*.

Pursuant to Rule 23, the notice will include information concerning the nature of the lawsuit; a verbatim copy of the releases applicable to each Class; the definition of the classes; the claims, issues, and defenses; the identity of the other cases; that a member may opt out or object and the process for each; that a member may enter an appearance through an attorney; and the binding effect of class judgment on members, among other information. *See* Haffner Dec., Exh. 2. The Notice Packet will also include an Opt-Out Form for the Rule 23 Class Members as well as an Opt-In Form for the FLSA Collective Class. *See* Haffner Dec., Exhs. 3, 4.

California and Washington Class Members shall have 60 days from the day the notices are mailed to opt-out of the proposed settlement and/or object to the settlement. SA ¶ 10, Haffner Dec., Exh. 2-4. Similarly, FLSA members will have 60 days from the date of mailing to opt-in to the FLSA settlement. *Id*. To encourage participation in the FLSA settlement, the Notice includes an electronic "QR Code" that FLSA class members can scan with their smartphones, which will take them automatically to a website, which they can sign into using personalized credentials, and opt in to the FLSA settlement without mailing in a paper opt-in form. *Id*. QR Codes provide an opportunity to opt-in instantly and conveniently.

## IV. LEGAL STANDARD

To receive judicial approval, a proposed class action settlement must be "fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(2). In making this

8

determination, the Ninth Circuit directs district courts to consider (1) the strength of plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 956 (9th Cir. 2003).

However, at the preliminary approval stage for a proposed class action settlement, some fairness factors cannot be fully assessed, so this Court need only review the Parties' proposed settlement to determine whether it is within the permissible range of possible judicial approval and whether the notice to the class and the scheduling of the formal fairness hearing is appropriate. *Litty v. Merrill Lynch & Co., Inc.*, 2015 WL 4698475 (C.D. Cal. 2015); *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (preliminary approval appropriate where settlement appears to be product of serious, non-collusive negotiations, has no obvious deficiencies, and fails within the range of possible approval).

A presumption of fairness arises where: (1) counsel is experienced in similar litigation; (2) settlement was reached through arm's length negotiations; (3) investigation and discovery are sufficient to allow counsel and the court to act intelligently. *In re Heritage Bond Litig.*, 2005 WL 1594403, *2 (C.D. Cal. 2005).

The Ninth Circuit has not established criteria for district courts to consider in determining whether an FLSA settlement should be approved, but district courts in this Circuit frequently apply the Eleventh Circuit's standard, which looks to whether the settlement is a fair and reasonable resolution of a bona fide dispute.[5] *Kerzich v. County of Tuolomne*, 335 F.Supp.3d 1179, 1184 (E.D. Cal. 2018).   Once it is

---

[5] There is no question that there is a bona fide dispute as to whether Plaintiffs and putative FLSA Collective members were entitled to additional pay beyond the pay they already received.  The FLSA claim, particularly with regard to the sleeper berth theory of liability, is hotly contested. *See* authority in Footnote 8, infra.

PLFS' RENEWED UNOPPOSED MTN. FOR PRELIM. APPROVAL OF CLASS & COLLECTIVE SETTLEMENT

established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of an FLSA settlement, while recognizing that not all of the factors apply because of inherent differences between class actions and FLSA actions. *Id.*

## V.    THE SETTLEMENT SHOULD BE PRELIMINARY APPROVED.

Taking the above authorities and guidance into consideration, it is clear that this settlement should be preliminarily approved, notice should be sent to the Classes, and this Court should set a date for a final fairness hearing.

### A.    The Settlement Is A Product of Serious, Informed, Non-Collusive Negotiations.

For the parties "to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007). Adequate discovery and the use of an experienced mediator support a finding that settlement negotiations were both informed and non-collusive. *See Satchell v. Fed. Express Corp.*, 2007 WL 1114010, *4 (N.D. Cal. 2007) (assistance of experienced mediator "confirms that the settlement is non-collusive").

Here, the parties began to litigate the merits of Plaintiff's claims and Defendant's defenses immediately, through Defendant's motion to dismiss. They also formally and informally exchanged extensive information prior to engaging in a mediation, and continued exchanging information in the months since mediation. Moreover, the parties only reached an agreement with the assistance of a highly respected mediator, Bruce A. Friedman, who has experience with wage and hour class actions. In fact, after an entire day of negotiations, the Parties were unable to reach a settlement at the mediation. At the end of the mediation, the Parties consented to allow Mr. Friedman to make a mediator's proposal which was accepted, confirming that the settlement was serious, informed, and non-collusive.

### B.    The Settlement Has No Obvious Deficiencies.

10

A court should also consider possible deficiencies in a settlement including, for example, issues surrounding the release of claims, the notice plan, the allocation, and a request for attorneys' fees. *See Deaver v. Compass Bank*, 2015 WL 4999953, at *7 (N.D. Cal. 2015).

### 1.    The Release Is Tailored to the Complaint.

The scope of the release here appropriate, as it is limited to claims that were or could have been asserted in this action. Unrelated claims – e.g., claims for discrimination – are not released by this settlement on a class-wide basis. Claims that arise against Defendant post-preliminary approval are likewise not released (nor could they be released). *See, e.g., Cotter v. Lyft, Inc.,* 193 F. Supp. 3d 1030, 1038 (N.D. Cal. 2016) ("What matters is whether the released claims arise from the same facts as those alleged in the lawsuit, and whether the settlement as a whole is reasonable in light of the strength and value of all the claims being released.").

### 2.    The Notice Provides Adequate Notice to Class Members.

A class notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a Class Member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members. Fed. R. Civ. Proc. 23(c)(3). Class members are entitled to the best notice practicable, reasonably calculated under the circumstances to apprise him or her of the pendency of the class action. *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994).

Here, the proposed notice is easy to read and includes all information necessary for California and Washington Class Members to decide whether to participate in the settlement, opt out, or object. Haffner Dec., Exh. 2.  It also provides clear, plain-language instructions on how FLSA members can opt in to the Collective and settlement.  *Id*.  Class Members will receive the notice by US Mail at

11

the best address available, using the National Change of Address database to update Defendant's records, as well as by email. SA ¶ 9, Haffner Dec., Exh. 2. If mail is returned as undeliverable, the notice packet will be forwarded to the forwarding address affixed thereto, or, if no forwarding address is provided, the Settlement Administrator will attempt to determine the correct address via skip-trace, or other search using the name, address, and/or Social Security Number associated with the Class Member, and re-mail the notice packet to the new address. This plan is an efficient and effective way to provide notice of the settlement to Class Members.

### 3. The Rule 23 Settlement Is Non-Reversionary.

Here, the parties have agreed to a non-reversionary settlement as to the California and Washington Classes, so members need not submit any form to participate and receive payment. As required under the FLSA, the FLSA portion of the settlement requires Collective action members to opt-in in order to participate.

### 4. Attorneys' Fees.

As will be briefed prior to final approval, Plaintiffs' Counsel intends to apply for fees and costs not to exceed 20% of the Gross Settlement Fund.[6] This is on the lower end of the typical range for class action fees in this circuit. *Barbosa*, 297 F.R.D. at 448 ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value."). The reasonable fees reflects hard-fought negotiations and class counsel's willingness to seek less fees to ensure that the largest possible amount of funds will be received by the class.

### D. The Settlement Falls Within the Range of Possible Approval.

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer." *Deaver*, 2015 WL 4999953, *9. A careful risk/benefit analysis must inform counsel's valuation of a

---

[6] The Parties struck a prior clause that would have reverted un-awarded attorneys' fees. Haffner Dec., Exh. 1.

class's claims. *Lundell v. Dell, Inc.,* 2006 WL 3507938, *3 (N.D. Cal. 2006).

Plaintiffs have the following approximate realistic valuation of the case:

   i.    *California Unpaid Wage Violations*

Plaintiffs multiplied the number of total estimated workweeks (118,996) by the number of hours per week they estimated were not paid for compensable time spent in California (1 hr. average, because some drivers would be compensated for all time in a week, and some would have multiple uncompensated hours) by an average minimum wage rate of $10 per hour for a total of $1,189,960.00.  Employees claiming failure to pay minimum wages are entitled to liquidated damages in equal amount, thus Plaintiffs estimated total damages to be $2,397,920.00.

   ii.    *California Failure to Reimburse Business Expenses*

Plaintiffs assumed unreimbursed cell expenses of $10 per week on average (e.g., $40 per month for a cell phone bill).  Plaintiffs multiplied the estimated weekly reimbursement rate ($10) by the number of weeks worked in California (118,996) for total reimbursement claim damages of $1,189,960.00.

   iii.    *California Waiting Time Penalties*

Plaintiffs multiplied the daily damages of $80 ($10/hr. x 8 hours) by the 30-day maximum to compute the damages per terminated California driver, then multiplied by the 2,699 terminated California resident drivers for total damages of $6,477,600.00.  However, this claim is derivative of the wage and reimbursement claims and any class member who did not suffer either of the two aforementioned violations, would have no claim for damages under this cause of action.

   iv.    *California Wage Statement Penalties*

Plaintiffs assumed that each of the 382,351 weeks[7] worked in California

---

[7] Plaintiffs note that the 118,996 weeks used in other calculations, accounts for discounts for Prior Overlapping Settlements.  Such a discount is arguably not appropriate for the wage statement claim, since the wage statement claim is based on any week where the employee receives a wage statement. Thus, Plaintiffs use the pre-discount number of workweeks for this analysis.

resulted in a wage statement violation. Plaintiffs assumed that each the 9,437 California class members suffered an initial violation at $50 ($471,450 in total) and the remaining 372,922 violations were at the $100 subsequent violation rate ($37,292,200 for subsequent violations and $37,763,650 in total). However, this assumes a 100% violation rate for every week worked by the California class members and disregards variations in the amount of time spent in California in a particular workweek which, in turn, impacts the likelihood that a person's wage statement was actually incorrect on a given week (for example, if a driver spends only a few hours driving in California in a given week, that week counts as a California workweek but the driver would not likely have an inaccurate wage statement because all wages would have been paid). Moreover, some of these individuals will be limited to $4,000 per person. (*See* Cal. Lab. Code § 226(e)(1).) In addition, this is also a derivative claim therefore the strength of this claim depends on the strength of the other claims. On that basis, Plaintiffs' realistic valuation of this claim is twenty percent of the total potential liability, for a total of $7,552,730.

> v.    *Violation of the Private Attorney General Act*

Plaintiffs calculated PAGA penalties by first calculating the proportion of the Class Period covered by PAGA since PAGA has a shorter statute of limitations than the other California wage and hour claims. Plaintiff Connell sent a PAGA letter on September 4, 2019, making the applicable PAGA period September 4, 2018 to present – approximately 28 months, or 33% of the 85-month California Class Period. Thus, the PAGA claim covers about 33% of the 382,351 weeks worked during the Class Period – about 125,951 workweeks. Plaintiffs then calculated PAGA penalties for each of the "primary rights" that had been violated. Where PAGA or the applicable Labor Code section provides for an "initial" violation and "subsequent" violations, Plaintiff used the initial violation. *See Amaral v. Cintas Corp. No. 2,* 163 Cal.App.4th 1157 (2008) (employers not subject to heightened penalties for subsequent violations unless and until a court or commissioner notifies the employer

14

that it is in violation of the Labor Code).

Plaintiffs calculated PAGA penalties for un-paid and under-paid wages by multiplying the total number of weeks worked without adjustment for overlapping settlement (125,951) by the $50 per initial violation penalty for a total of $6,297,550. *See* Cal. Lab. Code § 558.  However, amount assumes a 100% violation rate and for the same reasons, Plaintiff discounted this to 20% of the total, for a realistic total $1,259,510 in PAGA penalties for un- and under-paid wages.

Plaintiffs calculated PAGA penalties for wage statements by multiplying the total number of unadjusted workweeks (125,951) by the $250 per initial violation penalty for a total of $31,487,750.  *See* Cal. Lab. Code § 226.3.  Plaintiffs again discounted this amount 20% for the same reasons, for a total of $6,297,550.

Plaintiffs calculated the PAGA penalties for failing to pay all wages due at separation by multiplying the number of separated California drivers (2,699) by the $100 per initial violation gap-filler penalty.  *See* Cal. Lab. Code § 2699(9)(f)(2). Thus, total penalties for this claim are $269,900.  Plaintiffs applied no discount because Plaintiffs presume that these individuals separated from Defendant with outstanding wages owing and therefore 100% suffered the violation.

The total realistic value of these three PAGA claims is $7,826,960.  Plaintiffs further discounted the PAGA claim for several reasons.  First, these claims are duplicative of Plaintiffs' wage claims for which they are already receiving renumeration.  *See Villacres v. ABM Indus., Inc.*, 189 Cal. App. 4th 562, 577 (2010) ("The violation of one primary right constitutes a single cause of action…").

Second, Plaintiffs are aware of multiple authorities that suggest that where a plaintiff brings a Labor Code claim for penalties (such as the penalties provided for in Labor Code section 226 for inaccurate wage statements, or in section 203 for continuing wages), the plaintiff may not seek PAGA penalties for that same Labor Code violation.  *See, e.g., Li v. A Perfect Day Franchise, Inc.*, 2012 WL 2236752, *17 (N.D. Cal. 2012) (where Court awarded 226 penalties for wage statement

15

violations "granting PAGA penalties for failure to provide accurate wage statements would be duplicative recovery" and plaintiffs "provided no authority, and the Court is aware of no authority, that would permit double recovery of essentially the same penalties." *Aguirre v. Genesis Logistics*, 2015 WL 3755239, at *3 (C.D. Cal. 2015) (court "declined to award penalties under § 226 and PAGA because it recognized that penalties under 226 and PAGA were duplicative").

Moreover, PAGA penalties are discretionary and there is a high risk that the Court could reduce this amount or even award no penalties at all, particularly when as here, the PAGA penalties are essentially duplicative of other claims. Therefore, Plaintiffs substantially reduced their PAGA valuation by 90% to $782,696.00.

### vi.    *Violation of California's Unfair Competition Law*

Plaintiffs did not assign any value to the restitutionary disgorgement claim because it would be duplicative of other damages.

### vii.    *California and Washington Meal and Rest Break Violations*

Plaintiffs assigned a *de minimus* value for the meal and rest break claims due to the Court's previous order granting dismissal of those claims. *See* Dkt. 21.

### viii.    *Washington Minimum Wage Violations*

Plaintiffs assumed 3 hours per week of unpaid minimum wage for Washington Class Members because of the increased amount of time they would spend in Washington by comparison to time California Class Members would spend in California (based on the requirement that Washington Class Members either be a Washington resident or spend 40% or more time in Washington). Plaintiff multiplied 3 hours by the total number of Washington workweeks (50,693) by an average minimum wage rate of $10.00 for unpaid minimum wages of $1,520,790.00. Revised Code of Washington section 49.52.070 provides for double damages as exemplary damages. Therefore, Plaintiff calculated Defendant's liability for this claim to be $3,041,580.00.

### ix.    *Washington Overtime Violations*

16

Truck drivers in Washington are entitled to overtime. *Bostain v. Good Express, Inc.,* 159 Wash.2d 700, 710 (2007). Plaintiff's estimate that, after accounting for wage averaging and overtime already paid to Washington Class Members, the unpaid overtime was approximately $4.00 per week. Thus, Plaintiffs multiplied the total number of weeks worked by the Washington class (50,693) by $4.00 per week, for total damages of $202,772.00. Plaintiffs are entitled to double damages for total damages of approximately $405,544.00. See RCW 29.52.070.

x.    *Washington Failure to Pay All Wages at Termination*

Plaintiffs did not assign damages to this claim as Washington does not provide additional damages for failing to pay all wages at separation.

xi.    *Washington Consumer Protection Act, Willful Refusal to Pay Wages*

Here, it would be difficult to prove that Defendant made representations to the Washington class, and failed to meet those representations. Plaintiffs thus did not treble damages under the CPA. Likewise, Plaintiffs concluded that it would be difficult to prove that Defendants willfully failed to pay Plaintiffs and Class Members their wages, considering the amount of wages paid to drivers, and industry standards and expectations.

**Total Estimated Exposure for California and Washington Classes:** Plaintiffs therefore estimated that the total exposure for all claims for the California and Washington Classes was $21,311,208.

| | |
|---|---|
| CA Min. Wage Claim | $2,397,920.00 |
| CA Reimbursement Claim | $1,189,960.00 |
| CA Waiting Time Penalties | $6,477,600.00 |
| CA Wage Statement Penalties | $7,552,730.00 |
| CA PAGA Claims | $782,696.00 |
| WA Min. Wage Claim | $3,041,580.00 |
| WA OT Claim | $405,544.00 |

17

| Total | $21,848,030.00 |
|-------|----------------|

**Total Estimated Exposure for FLSA Collective**.

Plaintiffs reviewed wage data from Defendant that strongly suggested that, on average, long-haul, over-the-road drivers earn above the federal minimum wage even if they are entitled to be paid 24 hours a day for all days they spend out over the road.   Given that the FLSA permits wage averaging for purposes of calculating whether an employee has been paid at least minimum wage for all hours worked in a workweek (*see, e.g., Douglas v. Xerox Business Services, LLC*, 875 F.3d 884 (9th Cir. 2017)), Plaintiffs believed that FLSA Collective Members would likely be owed between zero and five hours of unpaid wages per workweek.  Thus, the maximum realistic exposure, per workweek, for FLSA Collective Members, would be approximately $36.25 ($7.25 minimum wage x 5 hours).

Plaintiffs' recovery of $2,390,000 for the California and Washington Class represents a recovery of approximately 10.94% of Plaintiffs' total valuation of $21,848,030 for the California and Washington Classes.   Likewise, Plaintiffs' recovery of $3.61 per workweek is approximately 10% of the maximum realistic exposure per workweek for FLSA Collective Members.

This settlement is within the acceptable range of recovery in wage and hour class action settlements routinely approved by courts. *See, e.g., Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. 2015) (granting final approval in wage and hour action where total settlement amount represented approximately 10% of potential value, and net settlement amount represented 7.3% of valuation); *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at *5 (C.D. Cal. 2014) (granting preliminary approval of wage and hour settlement for 9.1 as within 'range of reasonableness'); *Thompson v. Costco Wholesale Corp.*, 2017 WL 1957552, at *8 (S.D. Cal. 2017) (granting preliminary approval of trucking wage and hour settlement reflecting 10% of exposure); *Deaver*, 2015 WL 4999953, at *10

18

(granting preliminary approval of wage and hour settlement for 10.7% of liabilities).

Therefore, this settlement falls within the possible range of approval.

### E.    The Remaining Factors Favor Preliminary Approval.

The remaining factors for consideration at this stage all weigh in favor of granting preliminary approval and ordering notice be sent.

First, the Court may consider the strength of Plaintiff's case and the risk, expense, complexity and likely duration of further litigation.  In evaluating their case and engaging in settlement negotiations, Plaintiffs were optimistic that they would succeed on the merits, but also recognized the risk that they may not prevail on some or all of their substantive claims.  Haffner Decl., ¶ 19.  Defendant raised substantial defenses to Plaintiffs' claims, including arguments that time logged as "off duty" or "sleeper berth" was not compensable under the law[8], that drivers were provided adequate meal and rest breaks under state and federal law and, in any event, that state meal and rest break laws were preempted, as this Court already found.  *Id*. Defendant also provided wage data showing that drivers made, on average, above minimum wage, even if they were entitled to be paid 16 or 24 hours per day.  *Id*. Finally, Defendant provided information about prior settlements and releases, which it argued would operate to substantially reduce the class size and value.  *Id*.

Plaintiffs also considered the substantial risk, expense, complexity and likely duration of continued litigation, and the risk of maintaining class action status through trial.   Haffner Decl., ¶ 20.  Plaintiffs recognized a risk that some or all of Plaintiffs' causes of action may not be amenable to class-wide resolution because, as Defendant argued, individual driver experiences varied widely.  *Id*.  Plaintiffs also analyzed the extreme uncertainty associated with trial, including the high cost of a trial balanced against the risk of a finding of no liability which may bind absent class

---

[8] *See, e.g., Nance v. May Trucking Company*, 685 Fed. Appx. 602, 605 (9th Cir. 2017) (finding that sleeper berth time is not compensable); *Petrone v. Werner Enterprises, Inc.*, 2017 WL 510884, at *5-7 (D. Neb. 2017) (sleeper berth time is presumptively non-compensable); *Kennedy v. LTI Trucking Servs.*, 2019 U.S. Dist. LEXIS 156650, at *10 (E.D. Mo. 2019) (same).

members and prevent them from pursuing their claims. *Id.* Finally, Plaintiffs considered that Defendant would likely appeal any adverse orders or judgments. *Id*.

Next, the Court may consider the experience and views of counsel and the amount offered in settlement. As noted, the settlement amount is well within the range of wage and hour settlements that have been approved in California. Here, Plaintiffs' counsel are experienced and respected employment class action attorneys who have litigated many similar class action wage and hour cases, and believe that the amount offered in settlement is fair and reasonable. Haffner Decl., ¶¶ 23, 24.

The Court may consider the extent of discovery conducted. Here, most discovery was conducted informally but the amount of information exchanged was considerable, and permitted Plaintiffs' counsel to adequately evaluate the claims.

Finally, Plaintiff notes that the existence of the two pending cases with overlapping claims, which claims will be resolved if this settlement is approved, does not change the foregoing analysis. The release encompasses all outstanding litigation, so to the extent the other plaintiffs – whose cases have not advanced beyond basic discovery – seek to represent other drivers, those claims will be resolved if this settlement is approved. The evaluation of the value of the settlement, and the strength and weakness of the claims and defenses, does not change simply because there are other cases with overlapping claims against the same defendant.

Nonetheless, the Parties have agreed that notice to the class will include information about overlapping litigation. While this is not required, the Parties have decided to include it in an abundance of caution, so putative class members may evaluate the existence of competing litigation and whether to proceed with the settlement here, or proceed with one of the competing plaintiffs. *See Does 1-2 v. Déjà vu Servs., Inc.*, 925 F.3d 886, 901 (6th Cir. 2019) ("Here, where the Settlement Agreement provides some monetary relief to every class member and compels Déjà vu to change its business practices through injunctive relief, failure to provide notice of other pending suits does not render the class notice unreasonable. For those

20

reasons, the notice comports with the requirements of due process.").

## VII.  CERTIFYING THE RULE 23 CLASSES IS APPROPRIATE.

Where a litigation class has not been previously certified, courts must confirm the propriety of a settlement class by determining if it meets the four prerequisites identified in Federal Rule of Civil Procedure 23(a) and additionally fits within one of the three subdivisions of Federal Rule of Civil Procedure 23(b).  *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 659 (E.D. Cal. 2008).

The Parties have agreed to certify the following Classes for settlement:

California Settlement Class: All current or former long-haul, over-the-road drivers employed by Defendant who drove in California at any time from December 20, 2013 through February 19, 2021 (the "California Class").

Washington Settlement Class:  All current and former drivers employed by Defendant from November 5, 2015 forward, and who either (a) had a last known address in the State of Washington; **or** who (b) drove 40% or more of their time in the State of Washington, from November 5, 2015 through February 19, 2021 (the "Washington Class").

FLSA Collective Settlement Class: All current or former drivers employed by Defendant at any time from March 4, 2017 through February 19, 2021 (the "FLSA Collective Class").[9] Settlement Agreement ¶¶ 3(a)-(c).

## A.  The Proposed Settlement Classes Satisfy Fed. R. Civ. P. 23(a).

Rule 23(a) requires that Plaintiffs demonstrate: (1) numerosity; (2) common questions of law or fact; (3) that their claims and defenses are typical; and (4) that they can adequately protect the interests of the class.  *E.g. Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 441 (E.D. Cal. 2013).

### 1.  The Proposed Classes Are Numerous.

A plaintiff will satisfy the numerosity requirement if "the class is so large that

---

[9] Plaintiffs provide a separate FLSA analysis as appropriate later in this motion.

21

joinder of all members is impracticable." *Castillo v. Bank of America, NA*, 980 F.3d 723, 729 (9th Cir. 2020) (internal quote omitted). "[C]ourts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." *Villalpando v. Exel Direct, Inc.*, 303 F.R.D. 588, 605-606 (N.D. Cal. 2014). Here, the California Class has at least 9,437 members, and the Washington Class has at least 2,213 members. Thus, numerosity is easily satisfied.

### 2. There Are Common Questions of Law and Fact.

Certification is appropriate under the commonality prong when "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Ninth Circuit "construes commonality liberally" and "it is not necessary that all questions of law and fact be common." *Murillo v. Pacific Gast & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010). Commonality may be satisfied by a single common question of law or fact. *Id.* (either "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class" satisfies this criterion). In *Wal-Mart Stores v. Dukes,* the Supreme Court stated class "claims must depend upon a common contention … of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 564 U.S. 338, 350 (2011).

Plaintiffs articulate individual claims, but the theories of liability and recovery are all based on Defendant's and its predecessors' generally applicable policies.

First, as to all members of the Classes, Plaintiffs allege that Defendant failed to provide meal and rest breaks according to applicable state law. Second, as to all members of the Classes, Plaintiffs allege that Defendant paid drivers either by the mile or by the hour for driving and on duty time but did not pay at all, or properly, for non-working time, including time spent filling out paperwork, loading and unloading, cleaning, detentions, inspections, while their truck is in the shop, and while they were in the sleeper berth or otherwise "under a load." Plaintiffs allege

22

that this pay policy violated California and Washington law and resulted in underpayment of federal minimum wage.  Third, as to members of the California Class, Plaintiffs allege that Defendant failed to reimburse drivers for work-related expenses.  Finally, for the calculation of overtime applicable to the Washington, there is a common contention that Defendant did not properly calculate the overtime rate for Washington drivers because non-discretionary load bonuses were not included in the calculation of the regular rate. Resolution of these issues will determine the validity Plaintiffs' and Class Members' claims "in one stroke."

These allegations apply to all members of the California and Washington Classes, albeit under their respective state laws. Thus, the determination of these issues will "be so for all class members or for none; their claims rise and fall together."  *Stockwell v. City & Cty. of S.F.*, 749 F.3d 1107, 1115 (9th Cir. 2014). Accordingly, Rule 23's commonality requirement is satisfied.

### 3.    Plaintiffs' Claims Are Typical.

Named plaintiffs must have claims that are "reasonably co-extensive with those of absent class members," but they need not be "substantially identical." *Johnson v. General Mills, Inc.*, 278 F.R.D. 548, 552 (C.D. Cal. 2012) (internal quote omitted).  The test is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005).

Here, Plaintiffs' claims arise out of the same policies and conduct by Defendant regarding its failure to pay minimum wage, pay all wages due and owing upon termination, provide proper meal and rest breaks, reimburse expenses, and violation of unfair competition laws in the respective states.  Plaintiffs are members

23

of the classes they seek to represent. The typicality requirement is met.

### 4. Plaintiffs and their Counsel are Adequate.

"Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other Class Members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020.

Plaintiffs' individual claims are consistent with the claims of other California and Washington Class Members they seek to represent. Additionally, Plaintiffs' counsel has significant experience litigating wage and hour class action cases. Haffner Decl. at ¶¶ 22-25. The adequacy of representation requirement has been met.

### B. The Settlement Class Satisfies Fed. R. Civ. P. 23(b).

Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to Class Members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

For reasons similar to those discussed in connection with the "commonality" inquiry, questions of law or fact common to California and Washington Class Members predominate over individualized inquiries. Most notably, the issue of whether Defendant's conduct violated applicable law can be adjudicated on a classwide basis, as can Class Members' substantive claims.

In addition, Plaintiffs contend class-wide treatment is superior to numerous individual actions as there are approximately 9,437 California Class Members and 2,213 Washington Class Members, although there is overlap between the two. Moreover, individual resolution of claims would realistically result in small settlements with minimal deterrent effect, if they are remedied at all. See, e.g., Noll v. eBay, Inc., 309 F.R.D. 593, 604 (N.D. Cal. 2015) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.").

All requirements for a settlement class under Rule 23 have been met, and the Court should certify the proposed Settlement Class for settlement purposes.

## V.    THE FLSA COLLECTIVE SHOULD BE CONDITIONALLY CERTIFIED FOR PURPOSES OF SENDING NOTICE.

In addition to seeking preliminary approval of the settlements, Plaintiffs also seek conditional certification of an FLSA collective action consisting of a national class of Defendant's drivers.  The conditional certification requirements are a low bar requiring only that the individuals be "similarly situated."  *See* 29 U.S.C.§ 216(b); *see also Misra v. Decision One Mortg. Co., LLC*, 673 F. Supp. 2d 987, 995 (C.D. Cal. 2008) (the burden is merely to make "substantial allegations" and a "modest factual showing" that plaintiff and the putative class are "victims of a common policy or plan that violated the law."). This is not as stringent a standard as Rule 23(b)(3)'s requirement that common questions predominate.  *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1003 (N.D. Cal. 2010).

Here, the FLSA Collective class members were over the road drivers who were subject to the same compensation plan.  The issue is whether that plan failed to compensate the FLSA Collective at the minimum wage for all working time, including pursuant to 29 C.F.R §785.22(a), which requires that when drivers are on trips exceeding 24 hours, they must be paid federal minimum wage for at least 16 of those hours, if not the full 24 hours.  Conditionally certifying the FLSA collective class will permit notice to be mailed out to potential opt-ins, who must then fill-out and return the appropriate form.  For the reasons discussed above, this Court should conditionally certify the FLSA collective action and permit such a mailing.

## VIII. CONCLUSION

For the foregoing reasons, Plaintiffs request the Court enter an order preliminarily approving the settlement agreement as fair and reasonable, conditionally certifying the Rule 23 Classes and the FLSA collective and ordering notice to be sent in accordance with the Parties agreement.

25

DATED:  May 17, 2021                    HAFFNER LAW PC

                                        By:  */s/Joshua Haffner*
                                        Joshua H. Haffner
                                        Drew R. Ferrandini
                                        Attorneys for Plaintiffs

PLFS' RENWEWED UNOPPOSED MTN. FOR PRELIM. APPROVAL OF CLASS & COLLECTIVE SETTLEMENT